J-S17016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.J.C., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.C., MOTHER | : | No. 3168 EDA 2016 |

Appeal from the Decree Entered September 8, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at Nos:  AP #CP-51-AP-0000760-2016,
DP #CP-51-DP-0002208-2015, FID #51-FN-001817-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: S.P.R., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.C., MOTHER | : | No. 3174 EDA 2016 |

Appeal from the Decree Entered September 8, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at Nos:  AP# CP-51-AP-0000761-2016,
DP# CP-51-DP-0002206-2015, FID# 51-FN-001817-2015

BEFORE:   OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 17, 2017**

C.C. ("Mother") appeals from the decrees entered September 8, 2016, in the Court of Common Pleas of Philadelphia County ("trial court"), which involuntarily terminated her parental rights to her minor sons, M.J.C., born

in May 2007, and S.P.R., born in February 2015 (collectively, "the

Children").[1]  After careful review, we affirm.

The trial court summarized the factual and procedural history of this

matter as follows.

> The family in this case became known to [the Philadelphia Department of Human Services ("DHS")] on January 21, 2015, when DHS received a report that there were domestic violence issues between Mother and [D.D.R., Jr.]  Mother's whereabouts were unknown.  On March 27, 2015, DHS learned that Mother was residing at a domestic violence women's shelter with the Children.  On July 23, 2015, DHS learned that while living at the shelter, Mother had left [S.P.R.] alone in a room.  [S.P.R.] had stopped breathing and was taken to the hospital.  DHS met with Mother at the hospital and implemented a Safety Plan.  On August 4, 2015, DHS learned that Mother was about to be discharged from the shelter because she had informed [D.D.R., Jr.,] of the shelter's location.  [D.D.R., Jr.,] had appeared at the shelter and had an altercation with Mother.  On August 5, 2015, DHS obtained an Order of Protective Custody and placed the Children in a foster home.  On September 30, 2015, the [trial] court adjudicated the Children dependent.  The case was transferred to a Community Umbrella Agency ("CUA") which developed a Single Case Plan ("SCP") with objectives for Mother.  Over the course of 2015 and 2016, Mother failed to successfully complete her objectives and visit the Children consistently.  On August 24, 2016, DHS filed [] petition[s] to terminate Mother's parental rights.

Trial Court Opinion, 11/16/16, at 1-2.

---

[1] The trial court entered separate decrees that same day, involuntarily terminating the parental rights of M.J.C.'s putative father, M.L.; involuntarily terminating the parental rights of any unknown father that M.J.C. may have; and involuntarily terminating the parental rights of S.P.R.'s putative father, D.D.R., Jr.  Neither M.L., D.D.R., Jr., nor any unknown father appealed the termination of his parental rights.

The trial court conducted a termination hearing on September 8, 2016. Following the hearing, the trial court entered decrees involuntarily terminating Mother's parental rights to the Children. On October 7, 2016, Mother timely filed *pro se* notices of appeal, along with concise statements of errors complained of on appeal. Mother's counsel filed notices of appeal and concise statements of errors complained of on appeal that same day.[2]

Mother now raises five questions for our review.

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa. C.S.A. [§] 2511(a)(1) without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties[?]

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa. C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties[?]

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa. C.S.A. [§] 2511(a)(5) without clear and convincing evidence to prove that reasonable efforts were made by [DHS] to provide [M]other with additional services and that the conditions that led to placement of the [C]hildren continue to exist[?]

_____

[2] Mother was represented by counsel during the termination proceedings, and her counsel continues to represent her on appeal. Because hybrid representation is not permissible, we will accept the notices of appeal and concise statements filed by Mother's counsel, and we will reject Mother's *pro se* filings. **See Commonwealth v. Glacken**, 32 A.3d 750, 752 (Pa. Super. 2011) (citations omitted) ("Pursuant to our Rules of Appellate [P]rocedure and decisional law, this Court will not review the *pro se* filings of a counseled appellant.").

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa. C.S.A. [§] 2511(a)(8) without clear and convincing evidence that the conditions that led to placement of the [C]hildren continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan[?]

5. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa. C.S.A. [§] 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [C]hildren and that termination would serve the best interest of the [C]hildren[?]

Mother's Brief at 7.[3]

_____

[3] In her counseled notices of appeal, Mother indicated that she was appealing "the final order entered in this matter on [the] 8th day of September 2016, where the [trial court] changed the goal to adoption and terminated Mother's parental rights." We observe that the decrees terminating Mother's parental rights did not change the Children's permanent placement goals to adoption. In addition, while the trial court entered permanency review orders on September 8, 2016, those orders did not change the Children's permanent placement goals to adoption either. The orders maintained the Children's permanent placement goals as "return to parent or guardian," and merely added adoption as a concurrent placement plan. *See In re M.T.*, 101 A.3d 1163, 1166 (Pa. Super. 2014) (quoting *In re N.W.*, 859 A.2d 501, 507 (Pa. Super. 2004)) ("'[A] goal change from reunification to adoption [i]s *not* a necessary prerequisite to the initiation of involuntary termination proceedings.'"). Thus, no goal change orders exist for us to review on appeal. To the extent the September 8, 2016 permanency review orders can be construed as goal change orders because they added adoption as a concurrent placement plan, Mother failed to include any claim relating to those orders in her statement of questions involved, and failed to develop any relevant argument in her brief. Any challenge to those orders is therefore waived. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved[.]") (citations omitted); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a

*(Footnote Continued Next Page)*

We consider Mother's claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the

*(Footnote Continued)* ─────────────

claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."').

- 5 -

emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). This Court need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we will analyze the trial court's decision to terminate under Section 2511(a)(8) and (b), which provides as follows.[4]

_____

[4] In its brief, DHS observes that Mother challenged the trial court's findings with respect to Section 2511(a)(1), (8), and (b) in her counseled concise statement, but failed to challenge the trial court's findings with respect to Section 2511(a)(2) and (5). DHS's Brief at 14-15. DHS insists that Mother therefore waived any challenge to Section 2511(a) pursuant to *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009). *Id.* at 15. In *K.T.E.L.*, a prior panel of this Court concluded that the appellant waived her challenges to Section 2511(a)(1), (2), and (5), because she failed to include those subsections in her statement of questions involved. 983 A.2d at 750. Contrary to the argument presented by DHS, however, we did not conclude that the appellant waived any challenge to Section 2511(a) as a result. Instead, we proceeded to address the merits of the appeal under Section 2511(a)(8), as the appellant preserved her challenge to that subsection successfully. *Id.* at 750-51. While we agree that Mother waived her challenges to Section 2511(a)(2) and (5) by failing to include those subsections in her concise statement, we decline to conclude that she waived any challenge to Section 2511(a), and we will proceed to address the merits of her remaining claims. *See id.*; *Krebs*, 893 A.2d at 797 (citations omitted) ("[A]ny issue not raised in a statement of matters complained of on appeal is deemed waived.").

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). "Notably, termination under Section 2511(a)(8)[] does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted) (emphasis in original).

Instantly, the trial court addressed Section 2511(a)(8) in its opinion only briefly. The trial court explained that it found "clear and convincing evidence that . . . throughout the life of the case[]Mother failed to successfully complete her objectives and visit the Children consistently. DHS's witness was unwavering and credible." Trial Court Opinion, 11/16/16, at 4.

In response, Mother argues that she remedied the conditions which led to the Children's placement in foster care, and that there is no evidence to suggest that terminating her parental rights would serve the Children's needs and welfare. Mother's Brief at 13. Mother contends that she is employed and has suitable housing for the Children, that she is sober, and that she completed domestic violence and healthy relationships programs. *Id.*

After carefully examining the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights pursuant to Section 2511(a)(8). During the termination hearing, DHS presented the testimony of CUA case manager, Ashley Burke. Ms. Burke testified that Mother's SCP objectives included

completing a domestic violence program, attending mental health treatment, attending the Achieving Reunification Center ("ARC"), and visiting with the Children. N.T., 9/8/16, at 30. With respect to ARC, CUA asked Mother to attend parenting, healthy relationships, mental health, and housing programs. *Id.* at 31.

Concerning Mother's compliance with these objectives, Ms. Burke testified that Mother completed a heathy relationships program at ARC on March 4, 2016, and completed a domestic violence program on September 6, 2016. *Id.* at 35, 46. Mother began a parenting program on July 13, 2016, but did not complete the program by the time of the termination hearing. *Id.* at 33.

With respect to Mother's mental health, Ms. Burke testified that Mother completed an initial mental health evaluation at Citywide Community Counseling Services on December 9, 2015. *Id.* at 42, 45. The evaluation recommended that Mother participate in weekly therapy sessions. *Id.* at 42. Mother reported to Ms. Burke that she attended mental health treatment for a few months following the evaluation, but then stopped.[5] *Id.* at 45.

---

[5] DHS also presented the testimony of Community Behavioral Health employee, Sharina Gatling. Ms. Gatling testified that she contacted the director of Citywide Community Counseling Services, who informed her that Mother attended an intake appointment there on May 10, 2016. N.T., 9/8/16, at 15. Mother missed two medication management appointments, but then returned on June 1, 2016. *Id.* Mother next attended on June 21, 2016, and returned on September 7, 2016. *Id.*

With respect to housing, Ms. Burke testified that Mother completed the ARC housing workshop in July 2016. *Id.* at 36. CUA then referred Mother to the DHS housing unit. *Id.* However, Mother continues to lack appropriate housing. *Id.* Mother recently informed CUA that she is residing with her cousin. *Id.* at 38-40. Mother informed CUA that she intends to leave her cousin's residence in the near future and move to a new property, which CUA has not had the opportunity to asses. *Id.* at 39-41.

With respect to visitation, Ms. Burke testified that CUA initially offered Mother two visits with the Children per week. *Id.* at 48. Visits were decreased to once per week in March 2016, due to Mother's noncompliance. *Id.* Specifically, Mother was attending only half of her visits. *Id.* Mother did not provide a reason for her failure to attend visits. *Id.* at 49. After March 2016, Mother continued to attend only half of her visits. *Id.* at 49-50. Mother's attendance at visits did not improve until June 2016. *Id.* Since the prior court hearing in June 2016, Mother attended eleven out of twelve visits. *Id.*

Thus, the record confirms that the Children have been removed from Mother's care for over twelve months. The Children were removed from Mother's care on August 5, 2015. At the time of the termination hearing on September 8, 2016, the Children had been removed for over thirteen months.

Further, the conditions which led to the Children's removal continue to exist. At the time of the termination hearing, Mother continued to lack

appropriate housing. Mother also continued to suffer from deficient parenting skills, as demonstrated by her failure to complete parenting classes, her failure to address her mental health needs, and her failure to attend visits with the Children consistently for the majority of their time in foster care.

Finally, terminating Mother's parental rights will best serve the needs and welfare of the Children. The Children have resided in foster care for over a year, and it is not clear when, if ever, Mother will be able to care for them. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d at 513.

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). We have discussed our analysis pursuant to Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be

considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).[6]

Here, the trial court concluded that terminating Mother's parental rights would best serve the Children's needs and welfare. The trial court emphasized that Mother exhibits deficient parenting skills, which resulted in M.J.C. being exposed to domestic violence, and S.P.R. nearly dying in July 2015. Trial Court Opinion, 11/16/16, at 5. The trial court found that the Children have a "friendly relationship" with Mother, but do not have a parent/child bond. *Id.* at 5-6. The trial court further found that both

---

[6] We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' . . . they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).").

Children reside in a pre-adoptive foster home, and that terminating Mother's parental rights would not cause them irreparable harm. *Id.* at 6.

Mother argues that she and the Children share a strong bond. Mother's Brief at 14. Mother contends that she would have been able to further strengthen this bond if DHS provided her with reasonable reunification efforts. *Id.* Mother insists that her failure to attend all of her visits with the Children was a result of DHS's failure to accommodate her work schedule. *Id.*

We again discern no abuse of discretion. Concerning the relationship between Mother and M.J.C., Ms. Burke testified that they share "more of a friendship" than a parent/child bond. N.T., 9/8/16, at 54, 84. Ms. Burke explained that M.J.C. displays "parentified tendencies." *Id.* at 54. When M.J.C. entered foster care, he tried "to assume a lot of the caregiver responsibilities for his brother. You could ask him anything and he knew all about his brother, down to the doctor's appointments, [and] what kind of formula he ate." *Id.* Ms. Burke further explained that M.J.C. initially became upset when Mother missed visits. *Id.* at 49. M.J.C. "struggled. He became withdrawn in the foster home. He began acting out." *Id.* However, after M.J.C. began attending mental health treatment, his behavior greatly improved. *Id.* at 90. Ms. Burke noted that M.J.C. resides in a pre-adoptive foster home, and that he has a good relationship with both his foster mother and her adult daughter. *Id.* at 57, 60. Ms. Burke opined that M.J.C. would not suffer irreparable harm if Mother's parental rights are terminated, "due

to the parentified relationship he has with his mother and his continued involvement with therapeutic services and his bond with the foster parent." *Id.* at 58. With respect to S.P.R., Ms. Burke opined that he has a parent/child bond with his pre-adoptive foster parents. *Id.* at 61. Ms. Burke did not believe that terminating Mother's parental rights would cause S.P.R. irreparable harm, "[d]ue to his young age and his bond with the foster parents." *Id.* at 60.

Thus, we conclude once again that terminating Mother's parental rights will best serve the needs and welfare of the Children. Mother remains incapable of caring for the Children. Meanwhile, the Children share a parent/child bond with their pre-adoptive foster parents. Ms. Burke testified that M.J.C. does not have a parent/child bond with Mother, and there is no evidence in the record to suggest that S.P.R. has a parent/child bond with Mother. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists."). The trial court was free to accept the testimony of Ms. Burke that terminating Mother's parental rights would not cause the Children to suffer irreparable harm.

Additionally, while Mother now claims on appeal that DHS did not provide her with reasonable reunification efforts by failing to accommodate her work schedule, our review of the record reveals that Mother failed to raise this issue during the termination hearing. We cannot fault the trial court for failing to accept testimony that Mother did not provide. Even if

Mother had testified during the termination hearing that DHS did not accommodate her work schedule, the failure to provide reasonable reunification efforts does not preclude termination of parental rights under Section 2511(a)(8) and (b).  ***See In re D.C.D.***, 105 A.3d 662, 671-76 (Pa. 2014) (holding that termination of parental rights pursuant to Section 2511(a)(2) does not require the provision of reasonable reunification efforts); ***In re Adoption of C.J.P.***, 114 A.3d 1046, 1055 (Pa. Super. 2015) (applying ***D.C.D.*** to Section 2511(a)(8)).

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to the Children.  We therefore affirm the court's termination decrees.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2017